IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUAH R. W., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | No. 21 C 4124 |
| ) | |
| KILOLO KIJAKAZI, Acting ) | Magistrate Judge Finnegan |
| Commissioner of Social Security, ) | |
| ) | |
|     Defendant. ) | |

## ORDER

Plaintiff Joshuah R. W., a minor, seeks to overturn the final decision of the Acting Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a brief explaining why the case should be reversed or remanded. The Commissioner responded with a competing memorandum in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court grants judgment in favor of the Commissioner.

## BACKGROUND

Plaintiff's grandmother protectively applied for SSI on behalf of her minor grandson on December 31, 2018, alleging disability since July 1, 2018 due to attention deficit hyperactivity disorder ("ADHD") and post-traumatic stress disorder ("PTSD"). (R. 134, 166). Born in 2008, Plaintiff was a school-age child (10 years old) at the time of the application. (R. 134). The Social Security Administration denied the application initially on March 21, 2019, and again upon reconsideration on October 17, 2019. (R. 47-70).

Plaintiff's grandmother filed a timely request for a hearing and on October 14, 2020, she gave testimony, with the assistance of counsel, before administrative law judge Edward P. Studzinski (the "ALJ").[1] (R. 33-46).

On November 30, 2020, the ALJ denied Plaintiff's claim for benefits. Following the required three-step analysis, the ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since the December 31, 2018 application date; (2) Plaintiff's ADHD, personality disorder, and PTSD are severe impairments; but (3) those impairments do not alone or in combination with his non-severe impairments meet, medically equal, or functionally equal any listed impairment. (R. 21-27). As a result, the ALJ concluded that Plaintiff was not disabled from the December 31, 2018 application date through the date of the decision. (R. 27). The Appeals Council denied Plaintiff's request for review on April 19, 2021. (R. 6-10). That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

In support of his request for reversal or remand, Plaintiff argues that the ALJ erred in finding that he does not meet, equal, or functionally equal Listings 112.08, 112.11, and 112.15. For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence and there are no errors warranting reversal or remand.

## **DISCUSSION**

**A.    Standard of Review**

A child is disabled within the meaning of the Social Security Act if he has a "physical or mental impairment, which results in marked and severe functional limitations,

---

[1]    The hearing was held telephonically due to the COVID-19 pandemic.

and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). In determining whether a child meets this definition, the ALJ engages in a three-step analysis: (1) if the child is engaged in substantial gainful activity, then his claim is denied; (2) if the child does not suffer from a severe impairment or combination of impairments, then his claim is denied; and (3) if the child's impairments do not meet, medically equal, or functionally equal the severity of a listed impairment, then his claim is denied. 20 C.F.R. § 416.924(b)-(d). *See also McCavitt v. Kijakazi*, 6 F.4th 692, 693 (7th Cir. 2021) (observing that because the disability analysis for children is not work-focused, administrative officials instead ask "whether the child's limitations meet one of the many listed categories of disability or are functionally equivalent to one of them.").

In reviewing an ALJ's decision, the Court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). *See also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151-52 (7th Cir. 2019). The Court "will uphold the ALJ's decision if it uses the correct legal standards, is supported by substantial evidence, and build[s] an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).

**B.     Analysis**

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that he does not meet, medically equal, or functionally equal Listings 112.08 (Personality and Impulse-Control Disorders), 112.11 (Neurodevelopmental Disorders), and 112.15 (Trauma- and Stressor-Related Disorders).

**1.     Meet or Medically Equal**

"To meet a listed impairment, a claimant must show that impairment 'satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement.'" *Amarian W. v. Kijakazi*, No. 19 C 2012, 2022 WL 45027, at *2 (N.D. Ill. Jan. 5, 2022) (quoting 20 C.F.R. § 416.925(c)(3)). "To medically equal a listed impairment, a claimant must demonstrate that the impairment is at least equal in severity and duration to every criteria of the listed impairment." *Id*. (citing 20 C.F.R. § 416.926). Here, Plaintiff argues that he satisfies the paragraph B criteria for the relevant listings, but he does not even mention the paragraph A criteria, much less explain how his impairments meet or equal them. This alone is fatal to his claim. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (the claimant "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing.").

Rather than make any attempt to fulfill his own obligations, Plaintiff faults the ALJ for failing to adequately articulate his reasons for determining that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of Listings 112.08, 112.11, or 112.15. (Doc. 14, at 7; Doc. 19, at 1). The Court agrees that the ALJ's discussion on this point could have been more fulsome. Nevertheless, it

is evident that the ALJ considered all three listings and addressed pertinent medical, school, and testimonial evidence throughout the decision. (R. 22, 24-26). *See* SSR 17-2p, 2017 WL 3928306, at *4 ("Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding.").

Moreover, the only physicians who opined on this issue, state agency psychologists David Voss, Ph.D., and Joseph Mehr, Ph.D., both concluded that Plaintiff does not meet or equal any listed impairment. (R. 50-51, 63). The ALJ found those opinions persuasive (R. 26), and Plaintiff neither challenges that decision nor points to any contrary medical assessment in the record. In such circumstances, any error the ALJ may have made in articulating why Plaintiff does not meet or equal a listing is harmless and does not require remand. *See Erica V. v. Saul*, No. 20 C 1106, 2020 WL 6381364, at *4 (N.D. Ill. Oct. 30, 2020) (claimant's argument that her symptoms were equivalent in severity to those described in a listing was insufficient to demonstrate medical equivalence where she did not identify any evidence from medical experts regarding equivalency as required under SSR 17-2p); *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021)) ("We have repeatedly emphasized that 'the harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.'").

2. **Functional Equivalence**

Where, as here, a claimant's impairments do not meet or medically equal a listing, the ALJ considers six "domains" of functioning to determine whether an impairment

5

functionally equals a listing. *Mosley for M.T. v. Kijakazi*, No. 20 C 6367, 2022 WL 4535203, at *11 (N.D. Ill. Sept. 28, 2022). The domains include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). An impairment functionally equals a listing if it results in "marked" limitations in at least two domains of functioning, or an "extreme" limitation in one domain. *McCavitt*, 6 F.4th at 693. A marked limitation "interferes 'seriously' with the child's ability to independently initiate, sustain, or complete activities in the domain, and an 'extreme' limitation interferes 'very seriously.'" *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010). *See also Andrew L. v. Kijakazi*, No. 20 C 1609, 2021 WL 5447035, at *1 (N.D. Ill. Nov. 22, 2021). The functional equivalence analysis requires the ALJ to take a "whole child" approach and "'assess the interactive and cumulative effects of all of the impairments for which we have evidence, including any impairments' which are not severe." *Seth W. o/b/o N.D. v. Kijakazi*, No. 21 C 37, 2023 WL 2646737, at *3 (N.D. Ill. Mar. 27, 2023) (quoting SSR 09-1p, 2009 WL 386031, at *3).

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that he has only a marked but not extreme limitation in interacting and relating with others. Alternatively, Plaintiff contends that the ALJ should have found him markedly limited in a second domain of functioning. Either way, Plaintiff says a finding of disabled is warranted.

### a. Interacting and Relating with Others

The domain of interacting and relating with others refers to "how well the child initiates and sustains emotional connections with others, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 702 (7th Cir. 2009) (quoting 20 C.F.R. § 416.926a(i)). Under the regulations, a school-age child like Plaintiff (age 6 to attainment of age 12): "should be able to develop more lasting friendships with children who are your age"; "should begin to understand how to work in groups to create projects and solve problems"; "should have an increasing ability to understand another's point of view and to tolerate differences"; and "should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. 416.926a(i)(2)(iv).

In finding that Plaintiff has a marked limitation in this area, the ALJ considered a variety of school and medical records. A January 22, 2018 Questionnaire from Plaintiff's 5th grade teacher indicated that he had a serious problem seeking attention appropriately, asking permission, following rules, and obeying adults, as well as a very serious problem expressing anger appropriately. (R. 24, 156). School records from April 2018 showed that Plaintiff had a difficult time regulating his emotions and switching from negative to positive moods, and required assistance to cope with his feelings. (R. 24, 674). Plaintiff also became impatient or upset if the teacher was unable to give him full attention, and "perceive[d] it as 'nobody cares about me.'" (*Id.*).

Primary care records from July through October 2018 reflect that Plaintiff would fight with his two-year-old sister, tried to throw her out of the house, and was jealous of

the attention she received from others. (R. 24, 717, 732). He also angered easily, used very violent content of play, and talked about killing and cannibalism. (R. 24, 722). In July 2018, psychiatrist Mandy L. Evans noted that when off his medication, Plaintiff was "very hyper, impulsive and dysregulated." (R. 723). And in August 2018, Plaintiff's grandmother reported that he was quite oppositional at times and would manipulate his caregivers. (R. 24, 726). During a consultative mental status examination on March 5, 2019, John L. Peggau, Psy.D., described Plaintiff as extremely precocious, confrontational, dramatic, and animated, and assessed an unspecified disruptive, impulse-control, and conduct disorder. (R. 24, 915).

The ALJ recognized that while Plaintiff at times presented as calm, cooperative, and pleasant (e.g., at doctor's appointments in October 2018, June 2019, and December 2019), his junior high school social worker noted that he continued to have very serious problems making and keeping friends, seeking attention appropriately, and expressing anger, as well as a serious problem asking permission and obeying adults. (R. 24, 260, 866, 1014, 1232). In addition, Plaintiff's 2019 IEP noted ongoing (but less frequent) "elopement" from the classroom, consistent struggles during recess and lunch, and a refusal to return to class after a break. (R. 24, 919).

Plaintiff insists that these records evidence an extreme limitation in interacting and relating with others. But he once again fails to confront the assessments from Drs. Voss and Mehr. Both physicians concluded that Plaintiff has only a marked limitation in this domain, and the ALJ reasonably found those uncontroverted opinions persuasive. (R. 26, 51-52, 64-65). *Madlock for D.B. v. Kijakazi*, No. 22 C 913, 2023 WL 2631673, at *4 (N.D. Ill. Mar. 24, 2023) ("Plaintiff's request for reversal is fundamentally undermined by

the fact that not a single treating, examining, or reviewing medical provider indicated [Plaintiff's] impairments caused greater limitations than those the ALJ assessed."). In essence, Plaintiff is asking the Court to reweigh the evidence and find him more restricted than any physician of record. This is something the Court will not do. *See Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) (the court "will not reweigh evidence or substitute [its] judgment for the ALJ's."); *Tina W. v. Kijakazi*, No. 20 C 6311, 2023 WL 4053818, at *7 (N.D. Ill. June 16, 2023) (declining the plaintiff's invitation to reweigh the evidence).

### b. Attending and Completing Tasks

Plaintiff argues that the ALJ still erred by failing to find him markedly limited in the domain of attending and completing tasks, which considers "how well the child is able to focus and maintain his attention, and how well he begins, carries through, and finishes his activities, including the pace at which he performs activities and the ease with which he changes them." *Hopgood ex rel. L.G.*, 578 F.3d at 700-01 (quoting 20 C.F.R. § 416.926a(h)). A school-age child like Plaintiff should be able to: "focus your attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments"; "concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments)"; and "stay on task and in place when appropriate." 20 C.F.R. § 416.926a(h)(2)(iv).

The ALJ found less than marked limitation in this domain because Plaintiff's difficulties with concentration and focus improved once he started taking Concerta. (R. 25). An IEP from April 2016 noted that Plaintiff (a 2nd grade student at the time) had difficulty staying on-task, was easily distracted, and had trouble staying seated. (R. 25,

620, 622-23). In her January 22, 2018 Questionnaire, Plaintiff's 5th grade teacher indicated that he had a very serious problem focusing long enough to finish assigned work, refocusing to task when necessary, carrying out multi-step instructions, organizing things, and completing work assignments. Plaintiff also had a serious problem working without distracting himself and others, and working at a reasonable pace/finishing on time. (R. 25, 155). An April 2018 IEP similarly stated that Plaintiff needed redirection to focus attention and ensure work completion. (R. 25, 674).

Records from Dr. Evans in July 2018 likewise document problems with organization, sitting still, staying focused in the classroom, and fidgeting, but Plaintiff was not taking medication for his ADHD at that time because his grandmother was hesitant about it. (R. 25, 712). During the exam, Plaintiff was hyperactive but redirectable, very talkative, and interrupted frequently. (R. 25, 717). Dr. Evans noted that without medication, Plaintiff was "very hyper, impulsive and dysregulated," and she prescribed Concerta. (R. 25, 723). The following month, Plaintiff had good eye contact with only mild hyperactivity that was "much less than the last visit." (R. 25, 728). Dr. Evans increased the Concerta dose due to medications wearing off during the day. (R. 25, 729).

In September 2018, Plaintiff was hospitalized for a few days with suicidal ideation. He was described as cooperative and talkative but had a difficult time sitting and needed redirection, though he was able to comply. (R. 25, 757). By March 2019, however, Plaintiff's ADHD symptoms were "well controlled," he was receiving "good reports from school," and a mental status examination was largely normal. (R. 25, 990). This remained the case during exams in April and May 2019. (R. 25, 1001, 1007). In October 2019, Plaintiff was hospitalized again due to suicidal ideation, and doctors added Ritalin

to his medication regimen. (R. 1079-80, 1085). As of December 6, 2019, Plaintiff was doing well at home and in school, and his grandmother did not have any real concerns. (R. 25, 1230-31). At a medication management appointment on February 4, 2020, psychiatrist Courtney Romba, M.D., adjusted Plaintiff's Concerta and Ritalin dosages to address occasional inattention in the morning. (R. 25, 1250). And though Plaintiff's junior high school social worker indicated that he had obvious to serious problems paying attention, focusing long enough to finish assignments, organizing things, and working without distracting others (R. 25, 259), during psychotherapy visits from August 27, 2020 to October 2020, Plaintiff was alert, oriented, and attentive, and was able to actively process relevant therapeutic material. (R. 25, 1134, 1137, 1143, 1147).

Plaintiff believes that these records demonstrate a marked limitation in attending and completing tasks, and expresses doubt that he retains the ability to "sustain any improved or stable functioning throughout the entire day." (Doc. 14, at 13). Again, Plaintiff points to no physician of record who found him markedly limited in this domain. Nor does he argue that the ALJ erred in crediting the opinions from Drs. Voss and Mehr, who both assessed less than marked limitation. (R. 51, 64). *See Madlock for D.B.*, 2023 WL 2631673, at *4. This Court is "not free to replace the ALJ's estimate of the medical evidence with its own." *Linda T. v. Saul*, No. 19 C 3950, 2020 WL 5210846, at *4 (N.D. Ill. Sept. 1, 2020) (internal citations and quotations omitted). The ALJ built an accurate and logical bridge from the evidence to his conclusion that Plaintiff has a less than marked limitation in attending and completing tasks, and the Court will not reweigh the evidence to reach a different outcome. *See Zoch*, 981 F.3d at 602; *Tina W.*, 2023 WL 4053818, at *7.

11

### c. Caring for Himself

The final domain at issue, caring for yourself, considers "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area." 20 C.F.R. § 416.926a(k). A school-age child like Plaintiff should: "be independent in most day-to-day activities"; "begin to recognize that you are competent in doing some activities and that you have difficulty with others"; "be able to identify those circumstances when you feel good about yourself and when you feel bad"; "begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior"; "begin to demonstrate consistent control over your behavior, and . . . avoid behaviors that are unsafe or otherwise not good for you"; and "begin to imitate more of the behavior of adults you know." 20 C.F.R. § 416.926a(k)(2)(iv).

The ALJ once again adopted the uncontroverted opinions from Drs. Voss and Mehr in concluding that Plaintiff has less than marked limitation in this domain. (R. 26, 52, 65). In the January 2018 Questionnaire, Plaintiff's 5th grade teacher noted that he had a very serious problem asserting emotional needs, responding appropriately to changes in mood, using appropriate coping skills, and knowing when to ask for help. (R. 26, 158). He also struggled with experiencing negative emotions or feelings, and often shut down. (*Id.*). As noted earlier, Plaintiff was hospitalized in September 2018 and October 2019 due to suicidal ideations. (R. 26, 757, 1079-80). Both times, Plaintiff was able to return to school upon discharge with decreased symptoms. (R. 26, 901, 1014). And with medication and psychotherapy, his symptoms were deemed "well controlled" and he

exhibited appropriate moods and affects through October 2020. (R. 26, 1023, 1134, 1137, 1139, 1141, 1143, 1145, 1147). During a primary care appointment in August 2020, Plaintiff reported that he enjoyed spending time with family and playing video games. (R. 26, 1287).

As with the other domains, Plaintiff believes these records demonstrate a marked limitation in caring for himself, but he cites no medical opinion to that effect. Instead, Plaintiff relies on the junior high school social worker's report that he has days where he struggles the entire day. (Doc. 14, at 14) (citing R. 262). That same record, however, also noted that Plaintiff can be very independent and have really good days. (R. 262). Plaintiff may disagree with the ALJ's evaluation of the evidence, but this Court "must uphold the decision even where reasonable minds can differ over whether [the claimant] is disabled." *Linda T.*, 2020 WL 5210846, at *4. Contrary to Plaintiff's assertion, the ALJ's reasoning is clear and he did not commit reversible error in reaching his conclusion.

### d. Summary

Viewing the record as a whole, the ALJ reasonably relied on the uncontradicted state agency opinions in concluding that Plaintiff does not have an impairment or combination of impairments that functionally equals a listed impairment. The ALJ built a logical bridge between the evidence and his conclusion and that decision is supported by substantial evidence, which is "not a high hurdle to clear." *Bruno v. Saul*, 817 F. App'x 238, 241 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). Plaintiff's request to reverse or remand the case for further consideration of this issue is denied.

**CONCLUSION**

For the reasons stated above, Plaintiff's request to remand the case is denied, and the Commissioner's Motion for Summary Judgment [17] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: September 27, 2023

_____
SHEILA FINNEGAN
United States Magistrate Judge